UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS HIGHTOWER,

        Petitioner,                              Civil Action No. 11-CV-13174

vs.                                            HON. BERNARD A. FRIEDMAN

PERCY CONERLY,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

        Petitioner Marcus Hightower has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his convictions for intentionally discharging a firearm from a motor vehicle, carrying a concealed weapon, third-degree fleeing and eluding a police officer, possession of a firearm during the commission of a felony, second-degree child abuse, two counts of felonious assault, and two counts of assault with intent to commit great bodily harm less than murder. He raises two claims for habeas relief. Respondent argues that the claims are meritless. For the reasons stated below, the Court shall deny the petition and decline to issue a certificate of appealability.

### I. Facts

        Petitioner was convicted of the above offenses following a jury trial in Wayne County Circuit Court. The Michigan Court of Appeals recited and relied on the following facts in denying petitioner's appeal on direct review:

> Detroit police officers Monica Evans and Deborah McComas . . .
> related at trial that in the early morning hours of August 4, 2007, they
> drove past a burgundy Dodge Intrepid as its driver fired gunshots out

of the Intrepid's passenger-side front window.  Officer Evans identified defendant at trial as the Intrepid's driver.  The officers turned their patrol car around and began a seven or eight block pursuit of the Intrepid that ended when they caught up to the Intrepid on the I-94 service drive, where it had crashed into a pole.  According to the officers, as they assisted defendant's girlfriend and their infant child, who also occupied the car when it crashed, they heard three or four gunshots headed in their direction, which Officer McComas characterized as "extremely close" and in the "immediate area."  On hearing the shots, the officers, defendant's girlfriend and the baby took cover, and the officers radioed that they were "under fire."  The officers agreed that the shots had come at them from the freeway embankment or the freeway itself, below where the Intrepid was located.  Officer Evans recounted that when she looked toward the area where the shots had originated, she saw in the "well lit" vicinity of the freeway defendant running with a limp across the freeway median and the distant freeway lanes.  Officer Evans added that she participated in a foot pursuit of defendant on a bridge across the freeway, at which point she could see defendant from 30 to 40 feet away, "long enough to give out a very good physical description of exactly what he was wearing ["a black and white striped shirt, dark colored pants"], pretty much his height, build, everything."

Officer McComas retrieved from a lane on I-94 a run-over nine-millimeter handgun, and later recovered at the Warren Avenue location where defendant had fired at another vehicle a nine-millimeter shell casing.  The police later learned that the Intrepid's registration bore defendant's name.  An officer apprehended defendant shortly after the shooting, when he eventually received advice to look for defendant at 4410 Courville; there, defendant's brother directed the officer to a back bedroom where he found defendant on a bed near the white shirt with black or gray stripes described by Officer Evans, which fit defendant.

*People v. Hightower*, 2009 WL 1767587, at **1-2 (Mich. Ct. App. June 23, 2009)

This recitation of the facts is presumed correct on habeas review in accordance with 28 U.S.C. § 2254(e)(1).  *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).  Petitioner has not rebutted this presumption by clear and convincing evidence.

## II.  Procedural History

2

After petitioner was convicted by a jury in Wayne County Circuit Court, the trial judge sentenced him to concurrent prison terms of two to four years for the discharge of a firearm from a vehicle conviction, the second-degree child abuse conviction, and each felonious assault conviction; two to five years for the carrying a concealed weapon conviction and the fleeing and eluding conviction; and five to ten years for each assault with intent to commit great bodily harm conviction – all to be served consecutively to a two-year prison term for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised these claims:

I. Defendant's constitutional rights to due process and an impartial jury were denied by the trial court's failure to grant a mistrial where the prosecutor committed misconduct by telling the jury the defendant's girlfriend gave him up, when such testimony was not in evidence, and by the prosecutor presenting evidence known to be false.

II. The competent evidence was not sufficient to overcome the presumption of innocence.

After the Michigan Court of Appeals affirmed petitioner's convictions, *Hightower*, *supra*, 2009 WL 1767587, petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was denied. *People v. Hightower*, 485 Mich. 1044 (Jan. 22, 2010). Petitioner then filed the instant petition. He raises these claims:

I. Petitioner Marcus Tyrone Hightower's Fifth and Fourteenth Amendment Rights to the United States Constitution, and the Michigan Constitution of 1963, Article I, were all violated when: A) An impartial jury was denied to Petitioner Hightower, by the trial court's failure to grant a mistrial after prosecutor misconduct; B) when the prosecutor presented evidence clearly known to be false; and C) where the competent evidence was not sufficient to overcome the presumption of innocence.

3

II. The State Appellate Court erroneously adjudicated Petitioner's claims contrary to Michigan Legislative Statute.

### III. Legal Standards

Title 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), *quoting Williams v. Taylor*, 529 U.S. 362, 405-6 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), *quoting Williams*, 529 U.S. at 413. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21. "A state court's determination that a claim lacks merit precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."
*Harrington v. Richter*, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003), and *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Further, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

# IV.  Discussion

## A.  Prosecutorial Misconduct Claim

Petitioner argues he is entitled to habeas relief because the prosecutor committed misconduct.  First, Petitioner claims the prosecutor argued facts not in evidence when he stated, in rebuttal, that petitioner's "girlfriend gave him up."  Second, petitioner argues that the prosecutor knowingly presented false testimony when police officer McComas testified that petitioner was the owner of the Dodge Intrepid.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *See Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id., quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  This Court must ask whether the Michigan Court of Appeals' decision denying petitioner's prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 132 S. Ct. at 2155, *quoting Harrington*, 131 S. Ct. at 786-87.

The Michigan Court of Appeals denied petitioner's claim that the prosecutor committed misconduct by referencing evidence not in the record:

> Defendant asserts that the prosecutor improperly referenced evidence outside the trial record in the following portion of his rebuttal argument:
>
> > The officers saw [ ][d]efendant driving that vehicle.
> > They saw him firing shots at another car.  They saw

6

> him while they were chasing him.  They saw him
> down on the freeway.  Line-up?  He was seen doing
> all these things and, in fact, he was arrested one hour
> later. Line-up? [ ] Defendant's girlfriend gave him up.

After a sidebar at which defense counsel placed an objection on the
record, the prosecutor continued,

> As I said, the girlfriend gave the Defendant up.  We
> know that while they were checking-while those
> officers were talking to her that she told them who he
> was, Marcus Hightower.  They knew to go to a house
> because she told them that's where he was going and
> then they knew to go somewhere else to find him
> because one of her family members told the officers
> to go to Courville to find him and lo and behold he's
> there.

No testimony or other evidence admitted at trial established or
reasonably tended to suggest that defendant's girlfriend "gave . . .
Defendant up," as the prosecutor repeatedly maintained.   The
prosecutor's emphasis of this fact in his rebuttal argument thus
improperly injected a matter entirely lacking evidentiary support in
the trial record. . . .   However, we conclude that the prosecutor's
inappropriate argument did not deprive defendant of a fair trial given
that the improper assertions by the prosecutor appeared in brief
fashion, the record contained a wealth of properly admitted evidence
establishing defendant's guilt of the charged crimes, and the trial
court cautioned the jury, in relevant part, as follows:

> I'm also going to ask that you . . . rely on . . . your
> collective memories in order to recollect the
> testimony of what you heard, okay.
>
> And because sometimes people will argue to you that
> perhaps things were stated when, in fact, they
> weren't.  So you're going to have to rely on your own
> collective memories to determine what was the sum
> and substance of that testimony.
>
> * * *
>
> You must think about the testimony, think about the
> evidence and what you decide, ladies and gentlemen,

7

is final.

* * *

To sum it up one more time, ladies and gentlemen, you are the ultimate triers of fact and what you decide is final.

* * *

Now, when you discuss this case and you decide on a verdict, ladies and gentlemen, you must consider that which was properly admitted into evidence. . . .

Very simply stated, [evidence is] going to be the sworn testimony of the witnesses and any exhibits that come in. That's you're [sic] evidence. It's not what I say. It's not what the prosecution has stated. It's not what the defense has stated. It is the sworn testimony, plain and simple. . . .

> *See Watson*, supra at 591-592 (finding no prejudice arising from an improper prosecutor appeal to jury sympathy because the comment was isolated and the trial court cautioned the jury not to be influenced by sympathy or prejudice).

*Hightower*, 2009 WL 1767587 at *4-5.

The prosecutor's comment "was not so pronounced and persistent that it permeate[d] the entire atmosphere of the trial." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotation omitted). Additionally, the trial court cautioned the jurors that what the lawyers said was not evidence. *See United States v. Carter*, 236 F.3d 777, 787 (6th Cir. 2001) ("Ordinarily, a court should not overturn a criminal conviction on the basis of a prosecutor's comments alone, especially where the district court has given the jury an instruction that may cure the error."). Based upon the foregoing, the Court concludes that the state court's decision was not contrary to or an unreasonable application of *Darden.*

8

Next, petitioner claims that the prosecutor knowingly presented false testimony when he allowed Officer McComas to testify that the Intrepid was registered to Marcus Hightower. The defense submitted as an exhibit a Michigan Certificate of Title showing the Intrepid was owned by Ebony Yvonne Rochina Cartwright.

A false testimony claim falls under the *Brady* disclosure doctrine, which requires the government to disclose evidence favorable to a defendant if it is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The "contours of [a false testimony] claim were predominantly shaped by two Supreme Court cases: *Napue v. Illinois*, 360 U.S. 264, 269–72, and *Giglio v. United States*, 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)." *Brooks v. Tenn.*, 626 F.3d 878, 894 (6th Cir. 2010).

The Sixth Circuit has developed a three-part test for determining if the prosecution has committed a *Brady–Napue–Giglio* violation:

> The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.

*Id.* at 894-95, *quoting Coe v. Bell*, 161 F.3d 320, 343 (6th Cir.1998). A false statement is material under this standard, and "[a] new trial is required[,] if the false testimony could in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 154, *quoting Napue*, 360 U.S. at 271.

Petitioner has highlighted an inconsistency between Officer McComas's testimony

9

and the certificate of title. However, this inconsistency is insufficient to establish that McComas's testimony was false, rather than simply the result of confusion or an uncertain memory. A prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty. Petitioner has failed to show that the prosecutor presented false testimony.

Because Petitioner has failed to show that the prosecutor engaged in misconduct, he also has failed to show that the trial court erred in failing to grant a mistrial. Habeas relief is unavailable on this claim.

## B. Sufficiency of the Evidence

Petitioner next argues that insufficient evidence was presented to identify him as the perpetrator in this case. In addition, petitioner argues that insufficient evidence was presented to establish the elements of assault with intent to do great bodily harm less than murder, assault with a dangerous weapon, and third-degree fleeing and eluding a police officer.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006), *quoting Jackson*, 443 U.S. at 324 n.16.

10

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010), *citing Brown v. Konteh*, 567 F.3d 191, 204-5 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, *citing Jackson*, 443 U.S. at 319. Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

### 1. Identity as the Shooter

Petitioner argues that the prosecution presented insufficient evidence to establish his identity as the perpetrator of the charged crimes because neither Officer McComas nor Officer Evans viewed the Intrepid's driver long enough to identify petitioner as the driver, no fingerprints were found on the gun, and petitioner tested negative for gunshot residue. The Michigan Court of Appeals held that sufficient evidence was presented to identify Petitioner as the perpetrator:

> Concerning the proof of defendant's identity as the charged criminal, the evidence at trial showed that the officers had the opportunity to see defendant, albeit briefly, when they first encountered him on an illuminated street firing gunshots out of the Intrepid. Officer Evans specifically identified defendant at trial as the Intrepid's driver. The officers briefly chased the Intrepid until it crashed and defendant fled the scene. However, Officer Evans spotted the Intrepid's driver running away across the "well lit" freeway, and began pursuing defendant on foot over a bride across the freeway that gave her a clear view of his physical build and clothing. Within the next hour or so, the police eventually located defendant in a bed in close proximity to the shirt Evans had described, which the arresting officer opined appeared too small for the other occupant of the residence. Furthermore, the officers learned that the burgundy

11

> Intrepid was registered in defendant's name. Although no one officer directly tracked defendant's movements after the Intrepid's crash, the evidence as a whole amply supported the jury's rational finding beyond a reasonable doubt that defendant committed the felonious assaults, the assaults with intent to commit great bodily harm, and all the other charged offenses.

*Hightower*, 2009 WL 1767587, at *2.

"A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), *citing Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010), quoting *Jackson*, 443 U.S. at 326. According the state court's findings of fact a presumption of correctness, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented to identify petitioner as the shooter did not "result[] in a decision that . . . involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## 2. Assault With Intent to do Great Bodily Harm and Felonious Assault

Petitioner argues that the prosecution presented insufficient evidence to sustain his assault with intent to do great bodily harm and felonious assault convictions. He argues that no evidence established that he tried to injure or had any intent to do great bodily harm to Officers McComas or Evans, or that he attempted to commit a battery.

In Michigan, "[t]he elements of assault with intent to do great bodily harm less than murder are: '(1) an attempt or threat with force or violence to do corporal harm to another (an

12

assault), and (2) an intent to do great bodily harm less than murder.'"  *People v. Brown*, 267 Mich. App. 141, 147 (2005) (footnote and emphasis omitted), *quoting People v. Parcha*, 227 Mich. App. 236, 239 (1997).  "The intentional discharge of a firearm at someone within range is an assault," *People v. Johnson*, 54 Mich. App. 303, 304 (1974), and the Michigan Court of Appeals "has defined the intent to do great bodily harm as 'an intent to do serious injury of an aggravated nature.'" *Brown*, 267 Mich. App. at 147, *quoting People v. Mitchell*, 149 Mich. App. 36, 39 (1986).   The elements of felonious assault are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery.  Mich. Comp. Laws § 750.82; *People v. Avant*, 235 Mich. App. 499, 505 (1999).

Viewing the evidence in the light most favorable to the prosecution, the Michigan Court of Appeals held that sufficient evidence was presented to satisfy each of these elements beyond a reasonable doubt.  The Michigan Court of Appeals relied on the following facts in reaching this conclusion: Officer Evans identified the petitioner as the driver of the vehicle from which gunshots were fired; Officers Evans and McComas testified that, after the Intrepid crashed and they were assisting petitioner's girlfriend and infant child, they heard three or four gunshots headed in their direction; Officer Evans pursued the shooter on foot and described the shooter as wearing a black and white striped shirt and dark-colored pants; petitioner was apprehended shortly after the shooting wearing a shirt that matched the description given by Officer Evans; and a nine-millimeter handgun was recovered from the area near where petitioner's vehicle crashed.  The state court concluded that the evidence "supported the jury's rational determination beyond a reasonable doubt" that petitioner was guilty of assault with intent to do great bodily harm and felonious assault with respect to each of the officers. *Hightower*, 2009 WL 1767587, at **1-2.

Although it did not cite the *Jackson* standard, the Michigan Court of Appeals clearly applied this standard.  This Court cannot say that the state court's conclusion that the evidence presented was sufficient was contrary to or constituted an unreasonable application of federal law.

### 3.  Third-Degree Fleeing and Eluding a Police Officer

Petitioner also argues that the evidence was insufficient to support his conviction for third-degree fleeing and eluding a police officer.  The Michigan Court of Appeals set forth the elements necessary to establish third-degree fleeing and eluding: (1) the law enforcement officer must have been in uniform and performing his lawful duties and his vehicle must have been adequately identified as a law enforcement vehicle; (2) the defendant must have been driving a motor vehicle; (3) the officer, with his hand, voice, siren, or emergency lights must have ordered the defendant to stop; (4) the defendant must have been aware that he had been ordered to stop; (5) the defendant must have refused to obey the order by trying to flee from the officer or avoid being caught, which conduct could be evidenced by speeding up his vehicle or turning off the vehicle's lights, among other things; and (6) some portion of the violation must have taken place in an area where the speed limit was thirty-five miles an hour or less, or the defendant's conduct must have resulted in an accident or collision.  *Hightower*, 2009 WL 1767587, at *3.

The Michigan Court of Appeals held that Officer Evans and Officer McComas' testimony established all of these elements.  When the officers first came upon the Intrepid, they were in full uniform and driving a clearly marked police car, with activated police lights and siren. They pursued petitioner for at least seven or eight blocks, but petitioner failed to stop or yield for numerous stop or yield signs and exceeded 60 miles per hour, stopping only after crashing into a light pole.  The Michigan Court of Appeals concluded that " a rational jury could have found beyond

14

a reasonable doubt that defendant had awareness of, but ignored, the uniformed officers' command to stop, embodied in their police cruiser's lights and sirens, by speeding away and disregarding stop signs and traffic signals posted in a residential neighborhood. Abundant evidence thus supported defendant's fleeing and eluding conviction."  *Hightower*, 2009 WL 1767587, at *3.

According the state court's findings of fact a presumption of correctness, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented for a finding of guilty did not "result[] in a decision that . . . involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Petitioner is not entitled to federal habeas corpus relief on this claim.

### C.  Michigan Supreme Court's Decision

Finally, petitioner argues that the Michigan Supreme Court's order denying his application for leave to appeal was contrary to Michigan law because it failed to recite findings of fact or conclusions of law.  "The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010), *quoting* 28 U.S.C. § 2254(a).  Consequently, petitioner's claim that the Michigan Supreme Court's decision was contrary to Michigan law is not cognizable on habeas review.

### V.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of

15

appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court finds that jurists of reason would not debate the conclusion that the petition in this matter fails for the reasons explained above. Therefore, the Court declines to issue a certificate of appealability.

## VI.  Conclusion

For the reasons indicated above,


IT IS ORDERED that the petition in this matter for a writ of habeas corpus is denied.


IT IS FURTHER ORDERED that no certificate of appealability shall issue.


                                      S/ Bernard A. Friedman
Dated: November 8, 2013               BERNARD A. FRIEDMAN
       Detroit, Michigan              SENIOR UNITED STATES DISTRICT JUDGE


16